IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| MARCUS ROBLES, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | 13 C 3214 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Virginia M. Kendall |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Marcus Robles, proceeding pro se, moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Robles pled guilty to credit card fraud and received a forty-six month prison sentence. Robles claims that he pled guilty because his lawyer told him that he would receive a sentence of twenty-seven months in prison. In light of the disparity between the sentence Robles received and the sentence he expected, Robles claims that he did not enter his plea knowingly and that his counsel did not provide adequate assistance. This Court denies Robles' petition.

## FACTS

On August 13, 2012, the government filed an information that accused Robles of credit card fraud in violation of Title 18, United States Code, Section 1029(a)(1). (12 CR 631, Dkt. No. 1.) At his arraignment, Robles entered a plea of guilty. (12 CR 631, Dkt. No. 6.) The plea agreement set forth the maximum statutory penalty for Robles' offense—ten years imprisonment. (12 CR 631, Dkt. No. 10 ¶ 8(a).) The plea agreement also set forth, "based on the facts now known to the government," an anticipated advisory sentencing guidelines range of

twenty-seven to thirty-three months in prison. (*Id.* ¶ 9.d.) The plea agreement further explained that the anticipated sentencing guidelines range was a prediction:

> Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

(*Id.* ¶ 9.e.)

Before accepting Robles' plea of guilty, this Court determined that his plea was voluntary and did not result from force, threats, or promises not contained in the plea agreement. After placing him under oath, this Court determined that Robles was competent to enter a plea of guilty based on his answers to a series of questions asked by this Court. For instance, this Court asked whether Robles had the opportunity to review the plea agreement with his counsel. This Court also asked whether Robles was satisfied with his counsel. Robles answered yes to both questions. This Court also explained to Robles that he could receive up to ten years in prison and that this Court would take into account the advisory sentencing guidelines. This Court made clear to Robles that the sentencing guidelines were no longer mandatory. Satisfied that his plea was knowing and voluntary, this Court accepted Robles' plea of guilty.

On March 5, 2013, this Court sentenced Robles to forty-six months in prison. (12 CR 631, Dkt. No. 26.) This sentence reflected the low-end of an advisory sentencing guideline range

of forty-six to fifty-seven months. (12 CR 631, Dkt. No. 27 at 8:12-14.) Robles' defense counsel objected to an increased criminal history score based on relevant conduct Robles' admitted to. (12 CR 631, Dkt. No. 22 at 10-11.) According to Defense Counsel, Robles agreed to admit to the relevant conduct solely for purposes of calculating his base offense level. (*Id.*) Because the relevant conduct occurred while Robles was on parole for another offense, however, this Court overruled Defense Counsel's objection and considered the relevant conduct in calculating Robles' criminal history category. (12 CR 631, Dkt. No. 27 at 8:7-11.) After sentencing him, this Court explained to Robles that he could appeal his sentence within fourteen days of the entry of the judgment and conviction order. (*Id.* at 22:19-22.) The plea agreement also set forth Robles' appellate rights. (12 CR 631, Dkt. No. 10 ¶ 19.c.)

Robles moved to vacate, set aside, or correct his sentence approximately nine weeks later, on April 29. 2013. He also filed an affidavit explaining that Defense Counsel told him that he would not receive a sentence of more than twenty-seven months in prison. (13 C 3214, Dkt. No. 6 at 1.) He attached a second affidavit from Roxanne Barnett as well as a letter written by Ms. Barnett. (*Id.* at 3-4.) Ms. Barnett signed her affidavit before a notary public. (*See id.* at 3.) Ms. Barnett's affidavit states that she was present at a meeting between Robles and Defense Counsel at which Defense Counsel told Robles that he would not receive a sentence of more than twenty-seven months in prison. (*Id.*) The government opposes Robles' motion and submitted an affidavit from Defense Counsel in support of its opposition.

## **STANDARD OF REVIEW**

A federal prisoner may move the court that imposed a sentence to vacate, set aside, or correct that sentence on the grounds that the court imposed the sentence in violation of the Constitution or laws of the United States, the court lacked jurisdiction to impose the sentence,

3

the sentence exceeded that permitted by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. "Relief under § 2255 is an extraordinary remedy because it asks the district court to essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). A district court may dismiss a petition under § 2255 at an early stage—and without an evidentiary hearing—if the record before the court shows that the petitioner is not entitled to relief. *Id.*

The Sixth Amendment provides criminal defendants with the right to effective counsel. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). Courts presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To rebut this presumption, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that, but for his counsel's performance, the result of the proceeding would have been different. *Lathrop*, 634 F.3d at 937. "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

In the context of a plea agreement, "a reasonably competent counsel will attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty." *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003). In addition to showing that counsel was not reasonably competent, the petitioner must show that counsel's deficiency was a decisive factor in the petitioner's decision to plead guilty. *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). A petitioner must show this

prejudice to a reasonable probability. *Id.* A court must deny a petition claiming ineffective assistance of counsel if the petitioner fails to establish either deficient performance or prejudice.

## DISCUSSION

**I.     Robles has not shown that Defense Counsel failed to provide reasonably competent counsel.**

Robles claims that Defense Counsel was ineffective in several respects. Robles claims that: (1) Defense Counsel misled Robles with respect to the prison sentence Robles would receive; (2) Defense Counsel did not adequately investigate and argue the effects of a head injury Robles suffered in 2002; (3) Defense Counsel did not account for the use of Robles' 1994 conviction in sentencing; (4) Defense Counsel advised against accepting a binding plea agreement; and (5) Defense Counsel advised against an appeal. (13 C 3214, Dkt. No. 1 at 5-6.) But none of Defense Counsel's actions as described by Robles were outside the wide range of professionally competent assistance. *See Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010).

**A.     Robles has not shown that Defense Counsel was deficient with respect to his sentencing calculations.**

To be competent, "counsel [must] attempt to learn the facts of the case and make a good-faith estimate of a likely sentence." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999). There is no indication that Defense Counsel did not do that. Defense Counsel calculated an anticipated guideline range of twenty-seven to thirty-three months in prison. (13 C 3214, Ex. A to Dkt. 5 ¶ 14.) This was the same range proposed by the government in its draft plea agreement. (*Id.* ¶ 13.) And this is the same anticipated range Robles agreed to in his plea agreement. (12 CR 631, Dkt. No. 10 ¶ 10.d.)

Yet according to Robles, Defense Counsel assured him that he would receive no more than twenty-seven months in prison and probably closer to twelve months due to factors such as staying out of trouble for five years and agreeing to plead to an information. Even if true, there is no evidence that Defense Counsel did not analyze the relevant facts and discuss them with Robles. *See Martinez*, 169 F.3d at 1053 ("To rise to a constitutional violation, there must be greater evidence . . . of the attorney's lack of a good-faith effort to discover and analyze relevant facts and discuss them with the client.") All Defense Counsel could do was predict Robles' likely sentence—and Defense Counsel's performance as counsel was not deficient just because his prediction was wrong. *See id.* ("In this circuit, an attorney's 'mere inaccurate prediction of a sentence' does not demonstrate the deficiency component of an ineffective assistance of counsel claim."). To the extent that Defense Counsel erred, his error was not so great that it rendered his performance ineffective. *See id.* (explaining that a lawyer's failure to inform a client of a greater punishment because he qualified as a career offender or to recognize the distinction between federal and state jurisdiction did not render performance deficient). Therefore, this Court rejects Robles' claim that Defense Counsel's performance was deficient with respect to his sentence prediction.

**B. Robles has not shown that Defense Counsel failed to investigate or consider the effects of Robles motorcycle accident.**

Robles claims that a motorcycle accident in 2002 left him with diminished mental capacity. (13 C 3214, Dkt. No. 1 at 6.) Robles further claims that he told Defense Counsel about his diminished mental capacity but Defense Counsel failed to bring it to this Court's attention. (*Id.*) Defense Counsel claims that Robles never told him about diminished mental capacity. (13 C 3214, Ex. A to Dkt. 5 ¶ 12.) During its plea colloquy with Robles, this Court asked Robles

whether he had ever received treatment for a mental health condition. Robles answered no. This Court also asked Defense Counsel whether he had any reason to doubt Robles' competency. Defense Counsel explained that he spent a lot of time with Robles and then answered no. At no time did Robles tell this Court that he suffered from a diminished mental capacity even though this Court explained to Robles that the purpose of the plea colloquy was to make sure that Robles was competent to plead guilty and understood his rights. Based on his answers to the questions this Court asked, this Court found Robles to be competent.

Significantly, Robles mentioned his motorcycle accident during his plea colloquy but did not indicate that he suffered diminished mental capacity because of the accident. When asked whether he suffered from any serious medical conditions, Robles said he suffered from arthritis and lost sight in his eye. Robles explained that he takes medical marijuana in California for arthritis in his left knee and because he was in a motorcycle accident. At no time did Robles suggest that the motorcycle accident caused diminished mental capacity. Therefore, this Court rejects Robles' claim that he suffered from diminished mental capacity. *See Hutchings*, 618 F.3d at 699-700 ("the district court need not hold an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.").

    **C.**    **Robles has not shown that Defense Counsel was not reasonably competent in his treatment of Robles' 1994 conviction.**

Robles claims that Defense Counsel assumed that Robles' 1994 conviction would not be a factor in determining Robles sentence. But the plea agreement contradicts Robles' claim because it states that Robles received three criminal history points for this conviction. (12 CR 631, Dkt. No. 10 ¶ 10.c.i.) During this Court's plea colloquy with him, Robles confirmed that he

7

reviewed the plea agreement with Defense Counsel. This Court also told Robles that his 1994 conviction was a factor in his advisory sentencing guidelines calculation.

And to the extent that Robles' claim is that Defense Counsel's guideline calculation did not account for the effect Robles' relevant conduct while on parole would have on his sentence, that argument fails for the reasons stated above in Section I.A. Robles agreed that he made purchases using counterfeit payment cards between October 29, 2006, and December 13, 2007. (12 CR 631, Dkt. No. 10 ¶ 7.) Robles' parole for his 1994 conviction did not end until August 27, 2007. (*See* 12 CR 631, Dkt. no. 27 at 7:9-10.) Therefore, Robles committed the relevant conduct while on parole. This conduct increased his criminal history score and resulted in an advisory sentencing guideline range of forty-six to fifty-seven months. Although Defense Counsel challenged this Court's use of Robles' relevant conduct while on parole to increase his criminal history score, that challenge was unsuccessful. But Defense Counsel's performance as counsel was not deficient just because his prediction concerning the effect of Robles' relevant conduct on his sentence was wrong.

**D.     Robles has not shown that the government offered a binding plea agreement.**

Robles claims that the government offered him a binding plea agreement. (13 C 3214, Dkt. No. 1 at 6.) But the Assistant United States Attorney and Defense Counsel contradict Robles' claim. (13 C 3214, Dkt. No. 5 at 6.) There is no evidence that anyone offered Robles a binding plea agreement. Even if someone did, Robles has not offered any specific information with respect to a binding plea agreement from which this Court could determine whether Defense Counsel handled it competently. For instance, Robles does not specify what sentence would have been in the alleged binding plea agreement. Moreover, it is not as if this Court would have had to accept such an agreement. Consequently, Robles has not shown that the government

offered a binding plea agreement or that, had the government offered a binding plea agreement, he suffered any prejudice because he did not accept it.

What is clear is that Robles entered a plea agreement pursuant to Fed. R. Crim. Pro. 11(c)(1)(B). Although the plea agreement states only that the parties entered the agreement "pursuant to Rule 11 of the Federal Rules of Criminal Procedure" (12 CR 631, Dkt. No. 10 ¶ 1), provisions within the agreement make clear that the agreement is non-binding. For example, the plea agreement states "[i]t is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above." (*Id.* at ¶ 12.) The plea agreement also states "[t]he government is free to recommend whatever sentence it deems appropriate within the applicable guidelines range." (*Id.* ¶ 11.) These provisions define the plea agreement as non-binding. Because Robles knowingly and voluntarily entered this non-binding plea agreement, this Court rejects Robles' claim that Defense Counsel's advice with respect to a binding plea agreement was ineffective.

> **E.  Robles has not shown that Defense Counsel's advice against an appeal was ineffective.**

Robles' plea agreement allowed him to appeal the validity of his guilty plea and the sentence imposed. (12 CR 631, Dkt. No. 10 ¶ 19.c.) He did neither. Robles claims that Defense Counsel advised against it. (13 C 3214, Dkt. No. 1 at 5.) As an officer of the court, however, Defense Counsel has an obligation to avoid frivolous appeals. *See Nunez v. United States*, 546 F.3d 450, 455 (7th Cir. 2008). Here, this Court not only sentenced Robles within the advisory sentencing guidelines range but also sentenced him to the low end of that range. And even though the advisory sentencing guidelines range used by this Court differed from that contained in Robles' plea agreement due to a higher criminal history score, that higher score resulted from

Robles' admitted relevant conduct. Because a sentence within the advisory sentencing guidelines range is presumptively reasonable, *United States v. Ramirez-Fuentes*, 703 F.3d 1038, 1049 (7th Cir. 2013), there was no good-faith basis for an appeal. Consequently, this Court finds no fault with Defense Counsel's advice concerning an appeal.

**II.     Robles has not shown that he would not have pled guilty absent Defense Counsel's counsel.**

A petitioner must do more than merely allege that he would have gone to trial absent counsel's bad advice to show prejudice. *Hutchings*, 618 F.3d at 697. Prejudice requires other probative, objective evidence such as a history of plea discussions and the nature of the bad advice concerning the sentencing consequences of a plea of guilty. *Id.* This is not a case where Robles has ever proclaimed innocence. Rather, Robles admitted during his plea colloquy that he committed the offense outlined in the information. And Robles does not argue now that he did not commit the offense. This undermines any attempt by Robles to show prejudice. *See United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010) (no prejudice where defendant's conduct and not counsel's bad advice caused a longer sentence). It is not as if going to trial would have altered Robles' sentencing profile with respect to his past convictions, which is what led to the increased sentence. *See Strickland*, 466 U.S. at 699-700 ("With respect to the prejudice component, the lack of merit of respondent's claim is even more stark. The evidence that respondent says his trial counsel should have offered at the sentencing hearing would barely have altered the sentencing profile presented to the sentencing judge."). In short, advice from counsel could not change the fact that Robles' committed the relevant conduct for his offense while he was on parole.

Robles entered a plea of guilty at his arraignment. Robles entered his plea agreement with the understanding that the anticipated advisory sentencing guidelines range was twenty-seven to thirty-three months in prison. (12 CR 631, Dkt. No. 10 ¶¶ 10.d.) The plea agreement stated that the sentencing guidelines were not only advisory but also that this Court was not bound by the plea agreement or the advisory sentencing guidelines. (12 CR 631, Dkt. No. 10 ¶¶ 9, 12.) The plea agreement also stated that the Probation Office would conduct its own investigation with respect to sentencing and that the plea agreement was not contingent with the Probation Office's or this Court's concurrence with the plea agreement's sentencing calculations. (12 CR 631, Dkt. No. 10¶ 10.e.) This Court confirmed Robles understanding during its extensive plea colloquy with him, explained that it could sentence him up to the ten-year maximum prison sentence, and told him that the sentencing guidelines were not mandatory. These facts also undermine any attempt by Robles to show prejudice.

Yet Robles contends that he would not have entered his plea of guilty had he known that he would be sentenced to more than twenty-seven months in prison. This self-serving statement does not show prejudice. *See Julian*, 495 F.3d at 499-500. The same is true for Ms. Barnett's affidavit. *See id.* Robles has not shown a history of plea negotiations where he wavered as to his guilt. Rather, a state court had already convicted Robles in connection with the same conduct that led to his federal charge. (12 CR 631, Dkt. No. 22 at 3.) And Robles has not altered his course once the federal government became involved. *See Julian*, 495 F.3d at 499 (defendant's decision to change plea at last minute reflects effect of counsel's advice on plea determination). Moreover, Robles has not shown that the sentence he received exceeded the maximum sentence he believed this Court could impose. In short, there is no objective evidence that Defense Counsel's advice was the decisive factor in Robles' decision to enter a plea of guilty.

**III.     This Court will not issue a certificate of appealability because Robles has not presented a substantial showing of the denial of a constitutional right.**

A petitioner cannot appeal a denial of a petition under 28 U.S.C. § 2255 unless a court issues a certificate of appealability. 28 U.S.C. § 2253(c); *see also Buie v. McAdory*, 322 F.3d 980, 981 (7th Cir. 2003). This requirement conserves judicial resources and protects appellate courts from the burden of unmeritorious petitions under § 2255. *See Young v. United States*, 124 F.3d 794, 799 (7th Cir. 1997). Courts may grant a certificate of appealability when a petitioner presents "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Gonzalez v. Thaler*, 132 S.Ct. 641, 649 n.5 (2012). A substantial showing of the denial of a constitutional right requires the petitioner to show that reasonable jurists could find room to debate whether the petition should have been resolved in a different manner or that the issues presented are adequate to entitle the petitioner to proceed with his claims. *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000).

Because this Court denied Robles' ineffective assistance of counsel claims on the merits, Robles must show that reasonable jurists would find this Court's assessment of his constitutional claims either debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack*, 529 U.S. at 484). Robles has made no such showing here and this Court finds that reasonable jurists could not find room to debate its ruling on the merits of Robles' claims. Robles has not shown that Defense Counsel's performance was deficient or that he suffered any prejudice because of the advice he received from counsel. Therefore, Robles has not shown that a certificate of appealability is appropriate.

## **CONCLUSION**

For the reasons stated herein, this Court denies Robles' motion to vacate, set aside, or correct his sentence.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 22, 2013